IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | | |
|---|---|---|
| G. CEFALU & BRO., INC. | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Civil Action No. _____ |
| | : | |
| STOP, SHOP & SAVE, INC., t/a | : | |
| BAINES MANAGEMENT CO., et al. | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
WITHOUT NOTICE AND ORDER TO SHOW CAUSE
AND IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff, G. Cefalu & Bro., Inc. ("Cefalu"), submits this Memorandum in support of its Motion for Temporary Restraining Order Without Notice and Order to Show Cause pursuant to Fed. R. Civ. P. 65 and for Preliminary Injunction.  In further support of this Motion, Plaintiff refers the Court to the Declarations of Plaintiff's representatives, Mark Moderacki ("Moderacki Declaration") and George Hanley ("Hanley Declaration"), and the Certification of Plaintiff's counsel submitted herewith.

INTRODUCTION

Plaintiff is a licensed dealer under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a et seq.  Between November 11, 2013 and June 21, 2014, Plaintiff sold and delivered to the Stop, Shop & Save supermarkets owned and operated by Defendants, goods having the principal value of $111,245.21 of which $106,459.21 constituted wholesale quantities of perishable agricultural commodities ("produce").  Plaintiff preserved its PACA trust rights under Section 5(c) of the PACA, 7 U.S.C. § 499e(c), by placing the language required by 7 U.S.C. § 499e(c)(4) on its invoices.  Defendants

have not paid for the goods and produce received.  Upon information and belief, Defendants Henry T. Baines, Sr., Anthony Baines and William Singleton are and were officers of Stop, Shop & Save, Inc., t/a Baines Management Co. ("Stop, Shop & Save") who directed the day-to-day operations of Stop, Shop & Save during the time period in question.  *See generally* Moderacki and Hanley Declarations.

Plaintiff seeks enforcement of the statutory trust established under the PACA, 7 U.S.C. § 499e(c), and the regulations issued pursuant thereto, 7 C.F.R. Part 46, 49 Fed. Reg. 45735 (Nov. 20, 1984) (the "PACA regulations").  This Court's jurisdiction is invoked pursuant to 7 U.S.C. § 499e(c)(5)(i).

## ARGUMENT

### THE PACA TRUST

The PACA was enacted in 1930 to "suppress unfair and fraudulent practices in the marketing of fruits and vegetables in interstate and foreign commerce" and "provides a code of fair play . . . and aid to [agricultural] traders in enforcing their contracts."  49 Fed. Reg at 45737.

In 1984, the PACA was amended to assure that suppliers of produce are paid by imposing a statutory trust on all produce-related assets, such as the produce itself or other products derived therefrom, as well as any receivables or proceeds from the sale thereof, held by agricultural merchants, dealers, and brokers.  7 U.S.C. § 499e(c)(2); *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132 (3d Cir. 2000); *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154 (11th Cir. 1990).  The trust must be maintained for the benefit of the unpaid suppliers, sellers, or agents who provided the commodities until full payment has been made.  *Id.*  The trust provision thus offers sellers of produce, "a self-help tool that will enable them to protect themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables."  49 Fed. Reg. at 45737.

Failure to maintain the trust and make full payment promptly to the trust beneficiary is unlawful. 7 U.S.C. § 499b(4). Produce dealers "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities[,]" and any act or omission inconsistent with this responsibility, including dissipation of trust assets, is proscribed. 7 C.F.R. § 46.46(d)(1). Dissipation of trust assets is forbidden.1  7 C.F.R. § 46.46(d)(i).

1.  PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF

The standard for granting injunctive relief in the Fourth Circuit requires the moving party establish (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *Winter v. NRDC, Inc.*, 129 S. Ct. 365, 374 (U.S. 2008). *See Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009) rev'd on other grounds, 130 S. Ct. 2371, 176 L. Ed. 2d 764 (2010); *WV Ass'n of Club Owners & Fraternal Servs. v. Musgrave*, 553 F.3d 292 (4th Cir. 2009); *Kolbe v. Balt. County*, 2010 U.S. Dist. LEXIS 81417, *3 (D. Md. Aug. 11, 2010). The instant claim for relief meets each of these tests and, accordingly, should be granted in all respects.

Rule 65(b) of the Federal Rules of Civil Procedure sets forth the standard under which a restraining order may be issued without notice. A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have

---

[1] The PACA regulations define "dissipation" as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in
Footnote Continued …

- 3 -

been made to give the notice and the reasons supporting the claim that notice should not be required. Plaintiff has met the standards to grant a Temporary Restraining Order Without Notice and a Preliminary Injunction. Plaintiff is entitled to the relief requested, which enables it to enforce the trust provisions of the PACA and the PACA regulations to secure its trust claim in the principal amount of $106,459.21, plus interest and attorneys' fees.

2. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS.

Plaintiff has made a clear showing that it is likely succeed on the merits at trial. *See The Real Truth About Obama, Inc.*, 575 F.3d at 345-46. Through the Declarations of its representatives and the Certification of counsel, Plaintiff has demonstrated that:

1. Plaintiff is a supplier or seller of wholesale quantities of produce licensed by the U.S.D.A. Moderacki Declaration ¶ 3 and Exhibit 1 attached thereto.

2. Stop, Shop & Save is licensed under the PACA as a dealer. See Moderacki Declaration ¶ 4 and Exhibit 2 attached thereto.

3. Defendants Henry T. Baines, Sr., Anthony Baines and William Singleton are and were the owners, officers, and /or directors of Stop, Shop & Save, Inc., t/a Baines Management Co. Moderacki Declaration, ¶ 5 and Exhibits 2 and 3 thereto.

4. Plaintiff sold and delivered to Stop, Shop & Save, in interstate commerce or contemplation thereof, wholesale quantities of produce valued at $106,459.21, which Stop, Shop & Save accepted and is past due and unpaid. Moderacki Declaration ¶ 8 and Exhibit 4 thereto.

---

connection with produce transactions. 7 C.F.R. § 46.46(a)(2).

5.      Plaintiff properly preserved its status as a trust creditor of Stop, Shop & Save under PACA by sending invoices for the produce to Stop, Shop & Save that contained the language required by 7 U.S.C. § 499e(c)(4).  Moderacki Declaration ¶ 10 and Exhibit 4 thereto.

6.      Defendant Stop, Shop & Save failed to maintain Plaintiff's trust assets such that they were freely available and the trust assets have been dissipated and are in immediate danger of further dissipation, as Stop, Shop & Save has informed Plaintiff it plans to close its doors on June 27, 2014 and turn over operation to Supervalu, an alleged secured lienholder of Stop, Shop & Save, which will liquidate the inventory at half price.  Hanley Declaration, ¶¶ 4 and 5.

These facts demonstrate that Plaintiff has made a clear showing that it likely to succeed on the merits.

3.      PLAINTIFF WOULD BE IRREPARABLY HARMED ABSENT INJUNCTIVE RELIEF

Plaintiff also has made a clear showing that it is likely to be irreparably harmed absent immediate injunctive relief.  Because it is all but impossible to recover trust assets once they have been dissipated, the loss to Plaintiff and other trust creditors would be irreparable.  See H.R. Rep. No. 543, 98th Cong., 2d Sess. 4 (1983), reprinted in 1984 U.S. Code Cong. & Admin. News, 405, 411; *Tanimura & Antle, Inc.*, 222 F.3d at 140; *J.R. Brooks & Son, Inc. v. Norman's Country Market, Inc.*, 98 B.R. 47, 50 (Bankr. N.D.Fla. 1989); *Continental Fruit v. Thomas J. Gatziolis & Co.*, 774 F. Supp. 449 (N.D. Ill. 1991); *Gullo Produce Co., Inc. v. Jordan Produce Co., Inc.*, 751 F. Supp. 64 (W.D. Pa. 1990).  Thus, dissipation of PACA trust assets constitutes immediate harm, and Plaintiff is entitled to an immediate injunction to prevent such dissipation. *Tanimura & Antle, Inc.*, 222 F.3d at 140 (finding irreparable injury and establishing that an injunction should issue upon a showing that the trust was depleted and payment was not readily forthcoming); *Frio Ice, S.A.*, 918 F.2d at 159 ("Upon a showing that the trust is being dissipated or threatened with dissipation,

a district court should require the PACA debtor to escrow its proceeds from produce sales, identify its receivables, and inventory its assets."); *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106 (2d Cir. 1987); *In re Richmond Produce Co., Inc.*, 112 B.R. 364, 367 (Bankr. N.D. Cal. 1990).

Additionally, giving Defendants notice before entry of a Temporary Restraining Order will allow Defendants to further dissipate PACA trust assets pending a hearing. *See* Moderacki and Hanley Declarations and Certification of Counsel, filed herewith. Such notice will only provide Defendants with advance warning that an order may be entered, thereby giving time to Defendants to make further payments of trust assets to liquidate personal liabilities of its principals or pay preferred non-trust creditors prior to the entry of the order. Thus, a further loss of trust assets would result if there is notice.

Defendants have the power to obtain immediate dissolution of the Temporary Restraining Order by payment to Plaintiff of the trust moneys that are owed. Alternatively, a prompt hearing will be held on Plaintiff's Motion for Preliminary Injunction, and Defendants can file an immediate application to dissolve the temporary restraining order under Rule 65(b). In the meantime, the trust is preserved because no assets can be transferred or dissipated.

### 4. THE BALANCE OF THE EQUITIES TIPS IN PLAINTIFF'S FAVOR.

Granting injunctive relief will not harm Defendants because it would only require that they satisfy their fiduciary duties as trustees of the PACA trust, which should be held for the benefit of unpaid produce suppliers. *Tanimura & Antle, Inc.*, 222 F.3d at 140. Therefore, by maintaining the integrity of the trust and preventing its dissipation, Defendants will not be harmed. Conversely, as addressed above, Plaintiff will be irreparably harmed without injunctive relief.

5.     INJUNCTIVE RELIEF IS IN THE PUBLIC INTEREST

Injunctive relief is in the public interest because the PACA trust provision specifically declares that the Congressional intent behind its passage is to protect the public interest and to remedy the burden on commerce cause by receivers who do not pay for produce.  7 U.S.C. § 499e(c)(1); *Tanimura & Antle*, 222 F.3d at 140.

Indeed, case law supports Plaintiff's entitlement to an immediate injunction preserving trust assets and for an accounting of Stop, Shop & Save's assets when the produce supplier is not paid. *Tanimura & Antle, Inc.*, 222 F.3d at 140 (irreparable injury established and injunction should issue upon a showing that the trust was depleted and payment was not readily forthcoming); *Frio Ice, S.A.*, 918 F.2d at 159; ("Upon a showing that the trust is being dissipated or threatened with dissipation, a district court should require the PACA debtor to escrow its proceeds from produce sales, identify its receivables, and inventory its assets."); *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106 (2d Cir. 1987); *In re Richmond Produce Co., Inc.*, 112 B.R. 364, 367 (Bankr. N.D. Cal. 1990).

Thus, the instant claims for relief meet each of these requirements, and accordingly, should be granted in all respects.

Finally, no bond should be required because Defendants already have the principal amount of $106,459.21 worth of trust assets from Plaintiff as security for the issuance of injunctive relief.

CONCLUSION

For the foregoing reasons, Plaintiff seeks orders directing Defendants to comply with the PACA and enjoining them from taking any action inconsistent with their duties of PACA trust maintenance. The requested relief is designed to afford Plaintiff necessary preliminary judicial relief to allow it to avail itself of its statutory trust rights.  Plaintiff respectfully requests that its Motions for Temporary

Restraining order without Notice pursuant to Fed. R. Civ. P. 65 and for Preliminary Injunction be granted.

Dated this 25th day of June, 2014.

                              McCARRON & DIESS

                              By: /s/ Kate Ellis
                                  Kate Ellis (Bar No. 1673)
                                  Blake A. Surbey (Bar No. 29870)
                                  4530 Wisconsin Ave., NW, Suite 301
                                  Washington, D.C. 20016
                                  (202) 364-0400
                                  (202) 364-2731 fax
                                  kellis@mccarronlaw.com
                                  bsurbey@mccarronlaw.com

                                  Counsel for Plaintiff